Good morning, Your Honors. My name is Andrea Seilstedt. I represent the Petitioner Appellants in this matter, as I have with the District Court and the Bishop Paiute Court of Appeals. With me today, also representing his family, is Petitioner Ronald Napoles. I would like to reserve one minute for rebuttal. And I will try to help you watch the clock, but you're ultimately responsible for the clock. May it please the Court, Congress enacted the Indian Civil Rights Act, including its takings clause, not just to establish theoretical rights or to generally admonish tribes to follow them, but for the purpose of providing a real enforcement mechanism in federal court to those whose rights have been seriously violated by official tribal action. And the circumstances of this case exactly meet the requirements for federal review under the habeas provision of Section 1303 of that act. There are two independent bases for jurisdiction in this case, one based upon the restrictive terms of judicial superintendence and control imposed by the order of the tribal court, and the other based upon coercive and threatening circumstances establishing a permanent physical and geographical restraint in conjunction with appellees' efforts to reject petitioners from their family's land assignment. Can I, Counsel, just interrupt you for a moment to ask you what the status is of your claims in the tribal appellate court right now? Yes, Your Honor. There have been several efforts and filings of charges. There is a currently pending new set of charges that has gone through the tribal court and is pending in a newly constituted tribal court of appeals. At the time we filed this, the court of appeals contract had been rescinded, and there was no court of appeals. But as this as we proceeded, they resurrected one. That being said, the restrictions, although not the first order, the other restrictions remain in place, and all the orders and the physical restrictions and fencing off the land are in place. So what's the status? I understand that the you're just telling me that the appellate court has been reconstituted, and so your case is pending there? Yes. And what stage has it been set for argument and briefing schedule? It's been set the latest round of appeal briefing before the tribal court of appeals is pending now. Well, doesn't your colloquy with Judge McGeeh raise the issue of the exhaustion of the remedies which the ICRA requires? Doesn't the ICRA require that you exhaust your tribal remedies before you come to Federal court? Yes, Your Honor. The Indian Civil Rights Act has the case law of the Act has acknowledged some aspects of exhaustion. And you have to establish that you exhausted the remedies or that it would be futile to do that. You also look at the time of the filing and what was available and what is the relief that's requested. At the time of filing, we had clearly exhausted all remedies. What's your case that says that you look at the time of the filing? Because it seems like my understanding of exhaustion is that if you have something pending, I understand that if the appellate court was not constituted, you didn't have, I guess, for that time period some ability for relief through the tribal appellate court. But if your case is currently pending, I guess I'd like to know your best cases to say, you know, that because it wasn't. The cases currently pending are new iterations of trespass charges. The cases, the previous case has been dismissed. And every time the petitioners move and try to move back on their land, essentially these petitioners have prevailed twice through two rounds of actions that were filed by the tribal council and the tribal courts. They appealed an initial round and won in the tribal court of appeals. It was remanded back to the tribal court. The tribal court, rather than have further proceedings, dismissed the case with prejudice. The petitioners reentered the land and started their normal use and occupancy. A new round of charges was filed. This case went on. Those were dismissed. And now they've gone on again in last April, and a new round has been filed. So the restraint, the physical restraint that's the basis for the habeas petition has been in effect all the way back from June of 2014. And so you've been successful at the appellate court. So I'm trying to figure out, when you say the physical restraint, when you've been successful at the appellate court, then when we go, when the petitioners go back on the land, the Respondents, all of them, the tribal court, the council and their agents have refused to honor and adhere to those findings. And so what happens is they are permanently restricted from the land. Sotomayor, let me ask you. It was my understanding that the previous trespass citations were dismissed. Dismissed with prejudice, which means the holding of that court, that they did not have authority to trespass the people, should be the good law. But instead, when they do. I don't know if it was in the record, but where is your citation, that they were dismissed with prejudice? Yes. Well, this, now you're getting information that comes after the filing of this particular case. At the time of filing of this case, we had a order, that temporary protection order, restricting them totally from the land and imposing those threats of further charges, even Federal criminal charges, because of the erroneous reference to the Violence Against Women Act. Let me just make sure I understand. They've been cited trespass citations. That's one of the things they've been doing, yes. Okay. And I think those have been dismissed based on your success in the last. No, Your Honor. Okay. They've had them. This is one of the issues in the case. They've had this repetitive, it's really a manipulation of the tribal court proceeding. And who's they? The tribal court, the tribal counsel. Those are the Respondents in the case. So the tribal judge, the lower tribal judge and the tribal counsel have, at each successful, have then returned to the land as if everything was normal, have went forward with the same actions, bringing the police, surrounding them on the land with this threat, even the arms, with the hand on the gun and all of that. So there's a physical apprehension in the field, followed by the filing of new charges, new charges of trespass. And every time we get to a juncture where we think it's resolved, a new set is filed. And there seems to be a total reluctance and inability to follow the previous decisions. So there's a current trespass citation out against, that had been issued against your client? Yes. When was that issued? The charges themselves were filed in April of 2017. The last decision was this summer in July. And the appellate ---- The last decision of what was in summer? The decision was, again, now the tribal court wants to find them guilty of the trespass citations. Did the tribal court find them guilty of the trespass? Yes, Your Honor. It did? Yes, Your Honor. On what day? Well, I'll have to refresh on that. It was in July of this last summer. July of 2018? Yes. Okay. And that case has been appealed, and the briefing is going on currently. Okay. And is there other protective orders or other orders out there besides the trespass citation? There is just that citation which holds them ---- which waives their penalties as long as they do not return back to the land, so it has the effect of continuing superintendents in control. That's related to the movement upon the land. All right. And I just wanted to ask you a question regarding detention. Did any of your clients live on the property in question? Well, yes, Your Honor. The family lives on all of the land. Their home is on it? The house is not. There is not a house upon the land. No. There was livestock and other pertinences upon the land, and if you go back and look at the original land grant documents to the family, and if you look at the 1962 ordinance about that, the land was to be provided for the livelihood of those individuals, and it included an agricultural opportunity because it was supposed to assist with the sustenance moving forward. So, no, there was not a house, but, yes, it was part of their total amount of land. And I wanted to say a thing about the principles, the animating principles that oftentimes cause the Federal court to hesitate to exercise jurisdiction. In this case, those principles don't apply like they do in those other cases, certainly not as they applied in Gifredo and Tavares, the most recent of the cases in the circuit. The focus of most of these cases has been on enrollment and core issues of sovereignty, of disenrollment and membership. None of those issues are involved in that case. And perhaps the most significant issue is that not only are there the interests of the tribe itself and these individuals, but there's important Federal interest involved in this case stemming back to the act that created the reservation and exchanged the land for it and the trust agreements that were entered into the original people, the grandmother of Mr. Napoles, to induce them to move upon what's now the reservation. And those documents provide for a continuing use and occupancy that's not typical tribal trust land like you see in other places. And the Federal government had an explicit purpose of creating that to keep people with a means of livelihood that was effective in the long run. And if you also look at those documents, they were to continue the interest of passing from one family member to another as long as they were available into the future. And that's one of the core issues of the case. This Federal interest also of interest are the interests of two other tribes in the Owens Valley, the Lone Pine, Paiute Shoshone, and the Big Pine, who share authority on this intertribal board, the Owens Valley Board of Trustees over the land. So this isn't a typical case where you can just say one tribe's disenrollment decision over these members is at issue. It involves other tribal interests and Federal interests, and so none of those canons that typically apply give deference to the tribe. So you're out of time, but I have just one. So what's your best case that you would point us to, you know, for us to rule in your favor? Well, the best cases are the ones on the line of the superintendents and control cases. All of the Supreme Court cases ranging from Hensley to Jones v. Cunningham holding that everything from parole and probation. Then you go to the Ninth Circuit, and we have Means v. the Navajo Nation. Okay. I think I understand. Thank you very much. You're out of time, but I'll give you a minute or two to respond. Okay. Thank you. Good morning, Your Honors. My name is Anna Kimberer. I'm the attorney representing the Bishop Paiute Tribal Council as well as the Tribal Court and Judge Kochmeister. I would like to reserve two minutes of my time for my co-counsel, Frank Lawrence, to address any questions the Court may have with respect to the arguments having to do with the Quiet Title Act and the indispensable party argument. Before I begin in addressing some of the points that were raised by Ms. Seelstad, I want to point out from our perspective the three significant issues that the district court was correct upon. Because Federal courts are courts of limited jurisdiction, it's presumed to lie outside the limited jurisdiction. The burden lies on the party asserting jurisdiction to support. And the district court believed that the appellants did not provide sufficient evidence to show that the Federal court had jurisdiction to hear this case. Judge Droz clearly identified this as purely an intra-tribal matter having to do with a land dispute. That does not give rise to a habeas relief pursuant to 1303. Number two, because the habeas relief is extraordinary relief and is to only be employed in the most extreme of circumstances, again, principles of Federalism must temper the Federal court's assertion of its authority pursuant to proceedings beyond its six jurisdictions. So talk to me, please, about the ongoing availability of tribal remedies, if any, that you see. Well, the tribal remedies with respect to trespass, as Ms. Sealstead pointed out, is still ongoing. So she does have these matters. This matter before the court today was having to do with trespass citations that were issued in, I believe, 2016. What they claimed was the judicial control and restraint had to do with the temporary protection order. However, that case was sua sponte dismissed by the tribal court judge in 2017. The defendants also, I should say the Petitioners, had withdrawn their writ of mandamus in that case, and so therefore they abandoned any appeal rights that they may have had with respect to this case. So that's what happened in this case. I thought the district court or the circuit court denied the mandamus. You're saying they withdrew the mandamus? They withdrew the mandamus. Okay. And then with respect to the latest round of trespass citations that have been issued, there has been a case, there has been a decision made by Judge Kochemeister in the tribal court on July 11th of 2018 of this year, who basically said, at the June 8th, 2018, limited hearing, several witnesses testified of particular importance is the testimony of Defendant Ronald Napolese that neither he nor any other defendants had a valid land assignment. Since none of the defendants have a valid land assignment to Block 3, Lots 6 and 7, the trespass conviction must be affirmed. So that was the finding of the tribal court in July. That matter is now under appeal. For the new trespass citations? Correct. Okay. Has that been appealed? It is up on appeal now. We just received the briefing statement. What's the status of the appeal? Defendants have filed an appeal challenging the tribal court decision. Briefing is going. We just got the briefing scheduled today. So the briefs will be filed, I believe, in November and December of this year. So is that issue, the issues there, different from the issues in this first case? The issues are relatively the same. What's going on? I'm trying to figure out. I mean, is this going to be a continuing circle? The appellate court is going to deny or going to grant relief and then the tribal court, again, is going to do the same thing? How long do they keep doing this? Well, there was no grant of relief. I think that was a misstatement by Ms. Seelstad. The first case was dismissed with prejudice, but that was by the tribe had requested that case to be dismissed because the defendants had removed their property from this land, their cattle, their equipment, and so therefore we felt there was no need for the trespass citations to move forward. That was the first iteration. The second trespass citations were dismissed sua sponte by Judge Kochemeister. So now we have the third set of trespass citations. We have a final court order basically saying these individuals do not have rights to use and occupy this property, therefore, if they continue to go onto the property, they will be issued trespass citations, they will have to go back into court, and they will have to defend themselves. But if they don't have a grant of standard land assignment, they will be found in trespass. And it's important to know that. But you say that issue is different than what the appellate court has already because they've gotten favorable rulings from the appellate court. Well, I don't know what favorable rulings they're discussing in terms of the intertribal court of Southern California decisions. Yes. Those were basically a remand to the district court. That was not necessarily a ruling on the merits. There is now a new court of appeals decision that came out of the Bishop Appellate Tribal Court that I wouldn't necessarily characterize it as winning or successful on the merits. Again, that was simply a remand to the tribal court to take evidence as to whether the defendants possessed a grant of standard land assignment. You agree with your opponent's, first of all, position that the law on exhaustion only requires the plaintiffs to exhaust the remedies available at the time the suit is instituted? No. I disagree with that. You have a case that says otherwise? A case that is — I believe that what the defendants did here was they abandoned their rights in the tribal court. And so, therefore, by abandoning their rights, they have foregone — you know, exhaustion requires there to be a, you know, carrying forward for the balance of the case. So when they withdrew their writ of mandamus and they chose to not appeal the dismissal by the tribal court, they did, in fact, abandon it. I don't understand what they would have done with the mandamus petition otherwise if it had been dismissed. I mean, when the claims was dismissed, didn't that mean they won? I think the claims was dismissed because they had removed their — again, had removed their property from the land. And so, therefore, the court sua sponte decided to dismiss the case. At this point in time, shortly thereafter, they went back on and trespassed onto the property. And at this stage, we have a court — tribal court determination that shows that they have, in fact, committed the act of trespass, that they do not possess any rights to use and occupy those lands. But when they filed this case, there was nothing pending. There was nothing they could do. That's correct. Well, actually, I wouldn't say that. There was something they could do. The temporary protection order was issued in November of 2016, and a hearing had been scheduled for December 22nd of 2016. Defendants requested that that hearing be stayed or delayed out a couple of months so that the court of appeals could handle their mandamus case. They had appealed that directly to the court of appeals. Judge Kochenmeister granted their request for a continuance of the hearing, but kept the temporary protection orders in place in the meantime. Eleven days after that is when they filed this habeas relief into the — into the Federal court. I see I have my two minutes left. If there's — Let me ask one more question. Assuming this case were principally — still is, but purely a land dispute, in other words, there are no allegations about detention and so forth, what court would have jurisdiction to hear that dispute? It would be, as far as land disputes are concerned — Yes. — the bodies of government that have the authority to address land disputes — Well, who is it? — are the tribal council, the Owens Valley Board of Trustees — Well, I mean — — and the Bureau of Injury. If you disagree with the council's determination, what court can you go to? There is no court with respect to — So it's not subject to judicial review at all? Well, the 1962 Land Assignment Ordinance dictates and controls the manner in which land assignments are to be addressed, and there are rights to appeal of the tribal council, rights to appeal any decisions by the Owens Valley Board of Trustees. So it would be — our limited jurisdiction is whether or not we find that there's a detention. That's correct. All right. And your agreement why there is not — your argument as to why there's not a detention is what? This is — there has been no severe or actual restraint, which is something that is necessary when it comes to determining habeas relief under 1303. No — no — no — no restraint on their liberties. What would be their liberties under these circumstances? It's entirely contingent upon their position that they have rights to use and occupy this land. None of them possess a grant of standard land assignment for this. As a matter of fact, four out of the seven individuals who are parties to this have grants of standard land assignment. And so to say that they have grants themselves, which they have houses built upon, but then for some reason have a right to use and occupy this land with no grant of standard land assignment in place, that does not give rise to — that does not — that does not And as I said, I wanted to — I don't have any questions on quiet title. Do you have any questions? No. No. So I don't — thank you for being here. Indispensable party argument? No. Unless you have a question? No. No. Thank you for — for being here, though. Appreciate it. Thank you. In conclusion, I would just like to say that in addition to the two principles I mentioned as far as habeas relief is extraordinary and should only be ventured into under extraordinary circumstances, which don't exist here, principles of federalism have to respect tribal sovereignty and require the court to interpret federal statutes related to tribes in a manner that best comports with self-governments. And that is Santa Clara Pueblo. And that is the cornerstone for any of these cases with respect to the level — the degree of available relief under the Indian Civil Rights Act. And 1303 is the only relief available, and that's habeas. And with respect to the — any takings argument, as they raise, that's simply in 1302. And there is no availability of private relief, and that's the courts have ever found. So thank you. Thank you. I'll give you two minutes. Your Honor. Thank you. So let me make it clear. The Petitioners have never abandoned their rights at any point. They've used every available means. Well, did you withdraw the mandamus? We did not withdraw. We filed — we've tried to adjust to the existing courts and whatnot. There was one mandamus action that was withdrawn early on in favor of other recourse. But in this time period that's relevant for the purposes of this detention, we had gone to file a mandamus action, and that's when we discovered that there was no longer an appellate court. And it's at that point with that court order, that temporary protection order that has those restricting measures and threats even of federal prosecution and action and full faith and credit, it was at that point and the point when there was no appellate court to go to on that mandamus action that we filed this action. And a lot of your questions go to things that have happened since, and I would suggest that the record as it's been submitted is clear on the issue of detention. And if there's remaining questions about exhaustion or mootness, that that be remanded to the lower court to flesh that out, because there are a lot of different proceedings. But I can attest that — I did want to ask you one question. I know you don't have much time, but humor me for just a minute. First, you agree that the only way you're here is on a habeas claim. Yes, absolutely. And what you would like is for habeas under 1303 to be as extensive as habeas under, for example, 2254. Yes, correct, Your Honor. Not more restricted. Let me tell you about a case I had about two months ago, coincidentally, and then get you to tell me what's different about this. I had a case, a rural county, and there was a husband who had a life estate and an ex who had the remainder and the divorce decree. He died, so she's entitled to the property. The sheriff's a friend of the decedent and tells her, you cannot go on the property. She shows her deed, and he says, no, you cannot go on the property, and if you do, I'm going to arrest you. She brings a 1983 claim that I'm working on the merits of, just like I said, a couple of months ago. Nobody claims that's a habeas case. There's no exhaustion. She certainly doesn't go through her remedies in state court. If the sheriff had come in and said, this is really a habeas claim, you have to exhaust, we would have scratched our heads and almost laughed. But that's not a 2254. That's a 1983 case. Isn't that your same case? Somebody is threatening to arrest him if he goes on this property? No, Your Honor. How is that a habeas claim? There's more significant restraints in our case than the one that you just mentioned. It's the totality of the circumstances that the court looks at under all of its precedent, Tavares and Gifredo, the totality of the circumstances. What's more restrictive? I mean, the sheriff was going to arrest this person, haul her down to jail. He had a gun right on his hip. Step one is that there was a court order that imposed those restrictive terms of superintendents and control, and there's a whole line of cases that say that even in this circuit, 14 hours of alcohol counseling order meets the requirements for habeas corpus in another setting. And in that Means v. Navajo Nation case, the restrictions were simply that the petitioner not go within 100 yards of his father-in-law's home, not contact him, and come back to court. And all those cases, because it's the court exercising its control and restricting the movement of the person, all those cases independently meet the requirement for detention. And in addition to that, in this case, we don't just have one sheriff going out one time. We have lots of law enforcement going out and circling them every time, and you can hear from the counsel's argument they're going to continue to do that unless there's some kind of intervention, whether there's a tribal appellate court order in the end or not. They're going to continue to assert their right and do that. And when it happens, there's been physical heavy equipment on the land. There's been physical injuries with shovels as they're on the land. There's been a real apprehension and fear, not just of arrest, but of some kind of physical harm because the law enforcement has their hand on their guns while they're going on. They're being circled and apprehended right on the land. They've been fenced out. They've been served with multiple citations at home, at work. Those working for the tribe were either fired or put on disciplinary measures. They were continually threatened with arrests and prosecution on the field and in these court orders, and that's going to continue to go on. That's a continuing state for them, going all the way back since June of 2014. And those are the conditions, Your Honor, with all due respect to the concerns about tribes and their sovereignty. Those are exactly the circumstances that reach to the level of habeas. And I know the courts have been very restrictive in this measure, but this is one that meets those requirements because of the totality of those circumstances, combined with the fact that the normal grounds for hesitating because of concern for one tribe, one tribe's sovereignty, are not present in this case. And always the case that supports your position that this is a detention. One case. What's the best case you have? Poudry from the Second Circuit. Means v. Navajo Nation in the Ninth Circuit. I just said one case. One case. Poudry. Thank you. This case is very close to Poudry. And if you look at Poudry, it's not just that they were banished for life, it's that there were other evidence of coerced peremptory deprivation, that's the words from the Poudry case, created by the totality of the circumstances. And in Poudry you had people accosting them in groups, threats and assaults and all of this, and we also have those conditions in this case, in addition to the permanent geographical restriction. It's even more serious because they're on their own land, and they expect I think you're entitled to some sort of security of use and enjoyment and safety on your own land, and they don't have that protection. So based on all of these circumstances, we believe there are grounds for detention to review the merits of the case. Thank you. Thank you, Your Honor. Thank you. Thank you both for your presentations here today. Mr. Lawrence, I appreciate your coming here and being willing to answer questions regarding the quiet title. But the matter of and the case of Napoles v. Destin-Rogers, Ronald Napoles v. Destin-Rogers is now submitted. Thank you.
judges: Tashima, Murguia, Hinkle